# Exhibit B



FILED
SAN MATEO COUNTY

AUG 2 2 2019

Clerk of the Superior Court
By _____
DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

COMPLEX CIVIL LITIGATION

JOHN S. MOORE III, individually and
on behalf of all others similarly situated,

        Plaintiffs,

vs.

NOTRE DAME DE NAMUR
UNIVERSITY, a California non-profit
public benefit corporation,

        Defendant.

                    /

Case No. 19CIV04765
CLASS ACTION

Assigned for All Purposes to
Hon. Marie S. Weiner, Dept. 2

***AMENDED*** CASE MANAGEMENT
ORDER #1



19 – CIV – 04765
CMO
Case Management Order
2002889

        Pursuant to the Notice of Assignment for All Purposes, Designation as Complex

Case, Setting of Case Management Conference, and Complex Fees due filed August 15,

2019, designating this putative class action case as a complex action, and single assigning

to the Honorable Marie S. Weiner in Department 2 of this Court,

        IT IS HEREBY ORDERED as follows:

        1.      All pleadings, motions, applications, briefs, and any and all other papers in

this case shall be filed with (and related filing fees paid to) the Civil Clerk's Office

located in the Hall of Justice, First Floor, Room A, 400 County Center, Redwood City,

1

California. **One extra copy of any such filing shall be (1) electronically served upon Department 2 at email address complexcivil@sanmateocourt.org or** (2) stamped "Judge's Copy" and *delivered by overnight or first class mail directly to Department 2* located at Courtroom 2E, 400 County Center, Redwood City, California 94063. DO NOT LEAVE THE JUDGE'S COPY WITH THE CLERK'S OFFICE. PLEASE ADD DEPARTMENT 2 TO YOUR **E-SERVICE OR** MAILING SERVICE LIST IN THE CASE AS TO ANY AND ALL PAPERS FILED WITH THE COURT. All motions and briefs shall conform with the California Rules of Court, especially Rule 3.1113, and indicate on the caption page that this matter is assigned for all purposes to Department 2. DO NOT FAX COPIES OR CORRESPONDENCE TO DEPARTMENT 2, AS THERE IS NO DEDICATED FAX LINE FOR THE CIVIL COMPLEX DEPARTMENT.

  2. As to any and all motions or other matters requiring a hearing, the hearing date shall be obtained *directly* from and approved by Department 2 at **(650) 261-5102** (and *not* with the Civil Clerk's Office nor with the Research Attorney), ***prior*** to filing of the moving papers or other initial filings.

  3. Pursuant to Section 1010.6(b) of the Code of Civil Procedure, Rule 2.253(a) of the California Rules of Court, and San Mateo County Superior Court Local Rule 2.1.5, all documents in Complex Civil actions (other than the original documents specified below) may be filed electronically. The document (other than exhibits) must be text searchable. Please visit www.sanmateocourt.org for further information on e-filing. **Please note that exhibits to any electronically filed briefs, declarations or other documents must be electronically "bookmarked" as required by CRC Rule 3.1110(f)(4)**

2

4. . Until further order of the Court, the following original documents must still be filed/lodged in hardcopy paper:

Ex Parte Motions and Oppositions thereto

Stipulation and Proposed Order

Proposed Judgments

Abstract of Judgment

Appeal Documents, including Notice of Appeal

Administrative Records

5. Proposed Orders should be e-filed with the motion or stipulation to which it relates in conformity with CRC Rule 3.1312(c). You must also email an editable version of the Proposed Order in Word format (not PDF) to complexcivil@sanmateocourt.org so that the judge can modify it prior to signing, if needed.

6. Correspondence to Department 2, such as discovery letter briefs, requests to take matters off calendar, and requests for rescheduling, regarding actions assigned to the Complex Civil Department may be submitted electronically, rather than paper, by e-mail addressed to complexcivil@sanmateocourt.org **All e-correspondence must be sent in at least 12 point type**. This email address is for the Complex Civil Litigation Department to *receive* correspondence, and is not a venue for back-and-forth communications with the judge. Communications to this email address are *not* part of the official court files – just like a paper letter, they are not "filed" documents – and will be retained for at least 30 days and then be subject to deletion (destruction) thereafter.

7.     All communications to the complexcivil@sanmateocourt.org email address MUST include in the header "subject line" the **Case Number and Name of Case** (e.g., CIV 654321 *Smith v. Jones*).

8.     *Ex parte* applications in this matter shall heard by Department 2, **on Tuesdays and Thursday between 2:00 p.m. and 3:30 p.m.**, and the parties are required to meet the requirements of CRC Rule 3.120 *et seq.*. With the consent of counsel for *all* parties, telephone conferences on *simple* interim case management matters may be scheduled with the Court for a mutually convenient time and date – with the scheduling and logistics of such telephone conferences to be the responsibility of the requesting party/parties.

9.     As to any discovery motions, the parties are relieved of the statutory obligation under CRC Rule 3.1345, and thus need *not* file a separate statement – instead the subject discovery requests (or deposition questions) and written responses (or deposition answers or objections) must be attached to the supporting declaration on the discovery motion.

10.     Given the nature of this case, the Court views document production and depositions as the most effective means of discovery for adjudication. Accordingly, no party may propound more than 35 special interrogatories *total* and no party may propound more than 35 requests for admissions (other than as to the authenticity of documents) *total*, without prior court order after demonstration of need and a showing that other means of discovery would be less efficient.

11.     In regard to all discovery disputes, counsel for the parties (and any involved third parties) shall meet and confer on any and all discovery disputes and, if there are remaining disputes, then counsel for each side shall serve on each other and

4

mail/deliver *directly* to Department 2 a short letter brief setting forth the dispute and attaching as *tabbed* exhibits to the letter the subject discovery requests and discovery responses (if any). **The discovery letter brief may instead be electronically delivered to Department 2 via email address complexcivil@sanmateocourt.org.** At the time or prior to submitting the letter briefs, counsel for the parties shall also schedule a discovery conference with the Court to occur no sooner than five court days after *delivery* of the last letter brief to the Court, in order to discuss the dispute. THE DISCOVERY DISPUTE LETTER BRIEFS AND THE DISCOVERY CONFERENCE SHALL BE DONE *WELL PRIOR TO* THE STATUTORY DEADLINES FOR FILING OF ANY MOTION TO COMPEL OR OTHER DISCOVERY MOTION. No discovery motion may be filed by any party unless and until there is compliance with the requirement of this Order, i.e., (i) substantive meet and confer, (ii) exchange of letter briefs, and (iii) discovery conference with the Court. This requirement does *not* constitute an extension of time for any statutory time period for filing and serving any motion under the Civil Discovery Act.

12.    Pursuant to CRC Rule 3.1113(i), the Complex Civil Department, Dept. 2, **does not require any appendix of non-California authorities, unless specifically stated by the Court as to a particular motion.**

13.    The initial Case Management Conference set for November 25, 2019 is VACATED. The initial Case Management Conference is set for **Friday, October 25, 2019 at 2:00 p.m.** in Department 2 of this Court, located at Courtroom 2E, 400 County Center, Redwood City, California. Counsel for all parties shall meet and confer on all matters set forth in California Rules of Court Rule 3.750 and Rule 3.724(8).

14.    In anticipation of the Case Management Conference, counsel for the parties should be prepared to discuss at the hearing *and* file written case management

5

conference statements (**in prose and details,** *not* **using the standardized Judicial Council form**) with a courtesy copy delivered *directly* to Department 2 on or before **October 18, 2019**, as to the following:

    a.    Status of Pleadings and Service of Process;

    b.    Status of Discovery, including the initial production of documents by all parties;

    c.    Status of Settlement or Mediation;

    d.    Conclusions reached after meet and confer on all matters set forth in CRC Rule 3.750 and Rule 3.724(8);

    e.    Any anticipated motions and proposed briefing schedule;

    f.    Setting of next CMC date; and

    g.    Any other matters for which the parties seek Court ruling or scheduling.

15.    Discovery is not stayed.

16.    **PLAINTIFF SHALL PROMPTLY SERVE THIS CMC ORDER #1 UPON ALL DEFENDANTS OR UPON KNOWN COUNSEL FOR DEFENDANTS, and promptly file proof of service.**

DATED:    August 22, 2019

                           HON. MARIE S. WEINER
                           JUDGE OF THE SUPERIOR COURT

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON    9/4/2019
By    /s/ Jennifer Tannous
            Deputy Clerk

JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlaw.com
HAMMONDLAW, P.C.
1829 Reisterstown Rd., Suite 410
Baltimore, MD 21208
(310) 601-6766
(310) 295-2385 (Fax)

*Attorneys for Plaintiffs and the Putative Class*

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| **JOHN S. MOORE, III**, and **LEE STRAWN**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**NOTRE DAME DE NAMUR UNIVERSITY**, a California Non-Profit Public Benefit Corporation,<br><br>Defendant. | CASE NO. 19-CIV-04765<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1) **Failure to Pay Wages for All Hours Worked (Cal. Labor Code §§ 226.2, 1194, 1194.2; IWC Wage Order No. 4-2001, § 4);**<br>(2) **Failure to Authorize and Permit Paid Rest Breaks and Pay Premium Pay (Cal. Labor Code §§ 226.2, 226.7, 1194, 1194.2; IWC Wage Order No. 4-2001, §§ 4, 12);**<br>(3) **Failure to Issue Accurate Itemized Wage Statements (Cal. Labor Code §§ 226(a), (e) and (h); 226.2);**<br>(4) **Failure to Pay Compensation Due Upon Discharge From Employment (Cal. Labor Code §§ 201-203); and**<br>(5) **Unfair, Unlawful, or Fraudulent Business Practices (Cal. Bus. & Prof. Code § 17200 *et seq.*).**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs John S. Moore, III ("Plaintiff Moore") and Lee Strawn ("Plaintiff Strawn"), on behalf of themselves and all other similarly situated, complain and allege the following:

## INTRODUCTION

1.      This is a class action under California Code of Civil Procedure § 382 seeking damages, interest, and other equitable relief, including injunctive relief and restitution, as well as reasonable attorneys' fees and costs, for unpaid wages, unpaid premium pay, and unreimbursed business expenses pursuant to California Labor Code ("Labor Code") §§ 226.2, 226.7, 1194, 1194.2, 201-203, and IWC Wage Order ("Wage Order") No. 4-2001, §§ 4 and 12, Cal. Civ. Proc. Code § 1021.5, and California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200 *et seq.* on behalf of Plaintiff Moore and other individuals who are or have been employed as part-time lecturers by Notre Dame De Namur University ("NDNU" or "Defendant") in California ("Class Members") at any time from four years prior to the filing of this complaint through to the trial date ("Class Period"). Defendant's violations of California's wage and hour laws, as described more fully below, have been ongoing for at least the past four years, and are continuing at present.

2.      During the Class Period, Plaintiffs and Class Members were paid on a piece rate per-credit unit basis during each semester. Additionally, Plaintiffs and Class Members did not earn a monthly salary equivalent of two times the state minimum wage for full-time employment. As a result, Class Members do not fall within the professional exemption, or any other exemption, of Industrial Welfare Commission Wage Order No. 4, and are non-exempt employees who are entitled to be paid for all hours worked.

3.      Because Class Members are piece rate workers, Defendant was required, pursuant to Labor Code §§ 226.2, 226.7 and Wage Order No. 4-2001, § 12, to pay them separately and hourly and at their average hourly rate for their time spent on rest breaks.  Defendant, however, did not pay them separately and hourly for their rest break time and as a result violated California's rest break laws, thus entitling Class Members to one hour of premium pay for each unpaid rest break. Additionally, Defendant was required to pay Class Members for their non-productive time, which it failed to do, in violation of Labor Code §§ 226.2, 1194, 1194.2, and Wage Order No. 4-2001, § 4, resulting in Defendant being liable to Class Members for unpaid wages.

4.      Additionally, Defendant maintained policies and/or practices that impeded Class Members' abilities to take a paid off-duty ten-minute rest period during days on which Class Members worked 3.5 hours or longer in a row, and failed to pay premium pay for missed rest breaks, in violation of Labor Code § 226.7 and Wage Order No. 4-2001 § 12.

5.      During the Class Period, Defendant failed to pay all compensation due and owing to Plaintiff Moore and Class Members for their unpaid wages and rest break premium pay, upon discharge from employment, which terminated at the end of each semester, in violation of Labor Code §§ 201-203.

6.      This action is also brought on behalf of a subclass comprised of Plaintiff Strawn and Class Members who are or have been employed by Defendant during the one year prior to the filing of the Complaint through to the trial date ("Wage Statement Subclass Period") for statutory penalties, injunctive relief, and reasonable attorneys' fees and costs pursuant to Labor Code § 226(a), (e), and (h) ("Wage Statement Subclass"). During the Wage Statement Subclass Period, Defendant knowingly and intentionally failed to issue accurate itemized wage statements to Plaintiff Strawn and Wage Statement Sub-Class Members by failing to include, among other information, the following: the number of piece-rate units earned and applicable piece rate; the total number of hours worked; all applicable hourly rates and the corresponding number of hours worked at each rate; compensable rest periods; and compensable non-teaching time, in violation of Labor Code §§ 226(a) and 226.2(a). Plaintiff Strawn and Wage Statement Subclass Members suffered injury as a result of Defendant's violation of Labor Code § 226(a).

7.      As a result of the above Labor Code violations, Defendant committed unfair, unlawful, and fraudulent business practices, in violation of the UCL.

**PARTIES**

8.      Plaintiff Moore is a resident of San Leandro, California who was employed by NDNU as a part-time adjunct instructor from approximately January 8, 2018 until May 11, 2018.  Plaintiff Moore taught graduate courses offered at NDNU.  During his employment, Plaintiff Moore was subject to Defendant's unlawful conduct described herein.

9.      Plaintiff Strawn is a resident of San Francisco, California who was employed by NDNU as a part-time adjunct instructor from approximately 2001 until May 2019. During his employment, Plaintiff Strawn was subject to Defendant's failure to issue accurate itemized wage statements described herein.

10.      Defendant is a California non-profit public benefit corporation, with its main campus located in Belmont, California and a satellite campus in Tracy, California.

///

///

///

## JURISDICTION

11.     This Court has jurisdiction over Plaintiff Moore and Class Members' claims for failure to pay wages for all hours worked under Labor Code §§ 226.2, 1194, 1194.2 and Wage Order No. 4-2001 § 4.

12.     This Court has jurisdiction over Plaintiff Moore and Class Members' claims for failure to authorize and permit Class Members to take off-duty rest breaks and/or failure to pay Class Members for their rest breaks separately and hourly apart from the piece, and for failure to pay premium pay for missed rest breaks, under Labor Code §§ 226.2, 226.7, 1194, 1194.2 and Wage Order No. 4-2001 §§ 4, 12.

13.     This Court has jurisdiction over Plaintiff Moore and Class Members' claims for compensation due upon discharge from employment under Labor Code §§ 201-203.

14.     This Court has jurisdiction over Plaintiff Strawn and Wage Statement Subclass Members' claims for failure to issue accurate itemized wage statements under Labor Code §§ 226.2(a) and 226(a).

15.     This Court has jurisdiction over the claims for restitution arising from Defendant's violations of Labor Code §§ 226.2, 226.7, 1194, 1194.2, and Wage Order No. 4-2001 §§ 4 and 12, under the UCL, Bus. & Prof. Code §§ 17203 and 17204.

16.     This Court has jurisdiction over claims for attorney's fees and costs pursuant to Labor Code § 1194 and Cal. Civ. Proc. Code § 1021.5.

17.     This Court has jurisdiction over the claims for declaratory and injunctive relief under the UCL, Bus. & Prof. Code §§ 17200 *et seq.*, and Labor Code § 226(h).

18.     The amount in controversy as to each Plaintiff, including claims for civil penalties and pro rata share of attorney's fees, is less than seventy-five thousand dollars ($75,000).

## VENUE

19.     Venue is proper in the County of San Mateo pursuant to Cal. Civ. Proc. Code §§ 395(a) and 395.5.  Defendant is headquartered in Belmont, California which is within San Mateo County. Plaintiffs were employed at Defendant's Belmont campus.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### *Defendant's Business and Class Members' Role in Business Operations*

20.     Defendant is a private, non-profit secondary education provider that offers both undergraduate and graduate programs, online and on campus.  The university is organized into three schools: College of Arts and Sciences, the School of Business and Management, and the School of

Education and Leadership.  Defendant offers 15 undergraduate degrees, 10 graduate degrees, and four credentials. Defendant's academic calendar is split into a Fall, Spring, and six-week Summer semester. As of the fall 2018, Defendant has approximately 1,600 students.

21.     In order to teach these students, Defendant employs part-time faculty. Each semester, Defendant employs approximately 150 to 200 Class Members to teach its students.

### Class Members Are Piece-Rate, Non-Exempt Employees under Wage Order No. 4-2001

22.     During the Class Period, Class Members were paid by the piece (i.e., by the credit unit).

23.     Class Members also did not qualify as exempt under any exemptions set forth in Wage Order No. 4-2001, § 1(A) as they were not paid a salary, but a piece-rate, and were paid less than the monthly salary equivalent of two times the California minimum wage for full-time employment.

24.     As a result, during the Class Period and Subclass Period, Defendant was required to comply with the obligation to pay Class Members for non-productive time separate and apart from the piece, to pay Class Members separate and apart from the piece for rest breaks, to pay Class Members for all hours worked, to authorize and permit off-duty rest periods, and issue accurate itemized wage statements pursuant to Labor Code §§ 226.2, 226.7, 1194, 226(a) and (e), and Wage Order No. 4-2001, §§ 4 and 12.

### Factual Allegations Relevant to Unpaid Wage Claims

Prior to July 1, 2017

25.     On information and belief, prior to July 1, 2017, Defendant issued all Class Members a uniform contract ("Part-Time Faculty Contract") that provided that Class Members were compensated a set amount of money for each credit unit taught. The more units Class Members taught, the more they were paid. This type of compensation is a form of piece-rate compensation.

26.     The Part-Time Faculty Contract also included the course each Class Member was assigned to teach; the start date and end date ("Contract Period"); and the first and last pay dates.

27.     During the semester, aside from teaching, Defendant required and expected Class Members to perform, and Class Members did perform, various tasks separately and apart from teaching the Course. Class Members were required and expected to (1) arrive on campus prior to the start of class to prepare the classroom and begin class on time and to be available to meet with students prior to start of class; (2) be available to students to meet for office hours after class; (3) be available to students during the week, including by phone and email and respond to student phone calls and emails within 48 hours; (4) create course materials, such as syllabi, tests and quizzes; (5) build daily lesson plans and lectures; (6) grade assignments, tests and quizzes and submitting grades and progress reports; (7)

complete end-of-term checklists with student grades; (8) attend faculty orientations, meetings and workshops; (9) attend graduations; (10) take attendance daily and enter attendance online ("Non-teaching Tasks").

28. In addition to the Non-teaching Tasks performed during the semester, Defendant expected and required Class Members to spend time performing unpaid work, which Class Members did perform, prior to the Contract Period including, but not limited to, preparing and submitting to Defendant a detailed syllabus with the course requirements. Since the Contract Period started one week prior to the beginning of the first pay period Class Members were necessarily not paid for this time. Defendant also expected and required Class Members to spend time performing unpaid work after the end of the Contract Period (and after the last class) such as grading final exams and submitting those grades to Defendant. Since the last day to submit grades was one week after the end of the Contract Period, Class Members were necessarily not paid for this time either.

Post July 1, 2017

29. Since July 1, 2017, some of the compensation policies applicable to Class Members have been incorporated into a Collective Bargaining Agreement ("CBA") between Defendant and the Services Employee International Union, Local 1021 ("Local 1021"), whose bargaining unit includes the Class Members' positions.

30. Pursuant to a CBA between Defendant and Local Union 1021, effective July 1, 2017 to June 30, 2020, Defendant paid Class Members according to a schedule set out in Appendix I of the CBA. The schedule provided that Class Members were paid on a per unit basis, with an increase in the per unit rate based on how many years the Class Members taught the subject. For example, starting in August 2017, Level 1 Class Members were paid $1,216 per unit taught. This rate increased with seniority, and increased for the 2018-2019 academic year, and is set to increase again in 2019/2020. The more units Class Members teach, the more they are paid. This type of compensation is a form of piece-rate compensation.

31. In addition, pursuant to Article 26, the CBA provides that Class Members are to be compensated for activities performed outside of teaching each credit. The CBA provides for special compensation for the following activities:

     a. **Evaluation of Thesis, Capstone, or Portfolio:** When approved in writing by the Dean, if a Faculty member fulfills the role of Second Reader of a Thesis, Capstone, or Portfolio Evaluation, and such work is beyond the scope of regular classroom responsibilities, the Faculty member will be paid $300.

     b. **References for Students:** When the assignment is made and approved in writing by the Dean, when a part-time faculty member writes a reference for a student who is

no longer part of a class taught by that part-time faculty member, the part-time faculty member will be paid $40. References written for students who are in a class taught by a part-time faculty member in that academic year are considered part of part-time faculty's regular work.

      c.    **Independent Study Courses:** When the assignment is made and approved in writing by the Dean, instruction in an Independent Study course will be paid $500 per course.

      d.    **Course Development: (A)** Traditional courses When the assignment is made and approved in writing by the Dean, when a faculty member develops a new unit-qualified course that was not previously taught or held at the University, and upon the Dean's receipt and acceptance of a syllabus and the course as satisfactory, the faculty member will be paid a minimum of $500 per unit. (B) Online Courses When the assignment is made and approved in writing by the Dean, when a faculty member develops a new unit-qualified online course, and upon the Dean's receipt and acceptance of a syllabus and the course as satisfactory, the faculty member will be paid a minimum of $500 per unit.

      e.    **Participation in Mandatory University-sponsored activities and Professional Development:** Participation during the period of the course teaching appointment) in all mandatory non-teaching university-sponsored activities beyond the scope of teaching duties, such as, for example, mandatory trainings, institutional assessment, or mandatory course or departmental meetings (1 per semester), and participation by part-time faculty in activities such as retreats, workshops, seminars, symposia, and trainings pertaining to teaching and teaching effectiveness, will be paid for each semester's teaching contract, with a monetary stipend of $150 for fall and spring contracts, only.

      f.    **Committee Work:** Part-time faculty members who serve on a faculty advisory committee, Joint Labor Management Committee or Union beginning with the 2016-2017 bargaining, will be paid $1,500 per semester, upon the completion of the charged work of the committee after the semester ends.

      g.    **Substitute Teaching:** When the assignment is made and approved in writing by the Dean, part-time faculty may teach a class session for another faculty member at the University with the approval of the Dean of the department or program in which the course is being offered. The University will pay the substitute part-time faculty $80/hour for each hour of class instruction. This pay is intended to compensate for preparation time as well.

32.    Moreover, pursuant to Appendix F, Part II – Faculty Performance, Evaluation, and Advancement, § 1.B.2, Class Members were required and expected to perform non-teaching activities, which Class Members did perform, outside of the classroom including: (1) prepare, administer, and grade examinations, projects, and community services projects; (2) assign grades in an accurate and timely manner; (3) provide student academic advising and mentoring; (4) perform faculty administration activities; and (5) perform student recruitment and interaction activities ("CBA Non-teaching Tasks").

### Defendant's Compensation Practices Applicable to Class Members Violated California's Minimum Wage and Rest Period Laws

33.    Because Class Members are piece-rate workers and are, in any event, non-exempt employees, Defendant is and was required under Labor Code §§ 226.2, 1194, and 1194.2 to pay them separately and hourly from the piece for non-productive time and/or at least minimum wage for all

hours worked. However, throughout the Class Period, Defendant failed to pay any wages to Plaintiff Moore and Class Members for the time spent working outside of the Contract Period and time spent performing Non-Teaching Tasks and CBA Non-Teaching Tasks. Nor did Defendant provide any means or mechanism for Plaintiff Moore and Class Members to record their time spent performing work outside of the Contract Period or Non-Teaching Tasks and CBA Non-Teaching Tasks, and had no practice and/or policy in place to compensate Class Members for any work performed outside of the Contract Period or Non-Teaching Tasks and CBA Non-Teaching Tasks.

34.     During the Class Period, Class Members routinely worked at least 3.5 hours or more on any given day. Defendant knew or should have known that Class Members worked 3.5 hours or more. Defendant was therefore required under Labor Code § 226.2 to pay Class Members at their average hourly rate for their time spent on rest breaks separately and apart from the piece, yet failed to do so, thereby triggering an obligation to make premium payments to Class Members under Labor Code § 226.7 and Wage Order No. 4-2001, § 12.

35.     During the Class Period, Defendant maintained policies and/or practices that impeded Class Members' ability to take off-duty 10-minute rest periods during shift of 3.5 hours or more. These policies and/or practices included, but were not limited to, arriving early to prepare for class, and being available to students before, during, and after class. Thus, Defendant failed to authorize and permit compliant rest breaks in accordance with Wage Order No. 4-2001, § 12(A) thereby triggering an obligation to make premium payments to Plaintiff Moore and Class Members under Labor Code § 226.7 and Wage Order No. 4-2001, § 12(B).

36.     As a consequence of Defendant's failure to pay wages owed for Non-Teaching Tasks and CBA Non-teaching Tasks, for time spent working outside of the Contract Period, and premium pay for unpaid or missed rest breaks, Plaintiff Moore and Class Members did not receive all compensation due to them when their employment terminated at the end of each semester. As a result, Plaintiff Moore and Class Members did not receive all wages due upon termination; nor did they receive these wages due within 30 days of the separation of their employment from Defendant.

### Defendant's Labor Code Violations Were Unfair Business Practices

37.     From at least four years prior to the filing of this complaint, through the present, Defendant has adopted and used unfair business practices to reduce Class Members' compensation and increase profits.  These unfair business practices include failing to pay Class Members for their time spent on Non-Teaching Tasks and CBA Non-teaching Activities separately and apart from their piece and/or failing to pay for time spent working outside of the Contract Period; failing to pay Class

Members for their time spent on rest periods separate and apart from the piece; failing to authorize and permit timely off-duty rest periods; failing to pay premium pay for missed rest breaks.

### *Defendant Failed to Issue Accurate Itemized Wage Statements*

38.     During the Wage Statement Subclass Period, Defendant failed to issue accurate itemized wage statements to Plaintiff Strawn and Wage Statement Subclass Members. In particular, Defendant issued wage statements to Wage Statement Subclass Members that failed to include the following information, including but not limited to: the number of piece-rate units earned and any applicable piece rate; the total number of hours worked; all applicable hourly rates and the number of hours worked at those rates; compensable rest periods, and compensable non-teaching time.

39.     Defendant's practice of furnishing Plaintiff Strawn and Wage Statement Subclass Members incomplete and/or inaccurate wage statements in violation of Labor Code § 226(a) was not an isolated and unintentional payroll error due to a clerical or inadvertent mistake, but rather the result of Defendant's regular compensation policies.

40.     Wage Statement Subclass Members could not readily ascertain their regular hourly rate, the total hours worked at that rate, the total hours worked during a pay period, gross and net wages earned, and number of pieces worked, and were not aware that they were owed unpaid compensation, from the wage statements alone, without reference to other document or information, including wage statements from previous pay periods. Wage Statement Subclass Members were also not issued a wage statement at all for the time spent working before and after the Contract Period. As a result, Wage Statement Subclass Members have suffered injury for the purposes of Labor Code § 226(e).

### CLASS ACTION ALLEGATIONS

41.     Plaintiff Moore bring this class action pursuant to Cal. Civ. Pro. Code. § 382 on behalf of the Class, and Plaintiff Strawn brings this class action pursuant to Cal. Civ. Pro. Code. § 382 on behalf of the Wage Statement Subclass. Upon information and belief, there are more than 100 Class Members and more than 100 Wage Statement Subclass Members. The members of the Class and Subclass are so numerous that joinder of all members is impractical.

42.     Plaintiff Moore's claims are typical of the claims of the Class because he was a part-time instructor who was (a) paid on a per-credit basis, (b) not paid separately and apart from the Court Rate, at his average hourly rate, for time spent on rest breaks, and not paid separately and apart from the Court Rate, at least minimum wage, for Non-Teaching Tasks and CBA Non-teaching Tasks, (c) subject to Defendant's policies and practices that prevented and/or impeded his ability to take off-duty rest

periods, (d) not paid premium pay for unpaid/missed rest breaks; and (e) not paid all wages due at termination.

43.     Likewise, Plaintiff Strawn's claims are typical of the claims of the Wage Statement Subclass because he was a part-time instructor who was not provided accurate and itemized wage statement for each pay period.

44.     Plaintiff Moore will fairly and adequately represent the interests of the Class, and Plaintiff Strawn will fairly and adequately represent the interests of the Subclass. Neither Plaintiff has any conflict with the interests of their respective classes.  Plaintiffs have retained competent and experienced counsel in complex class action litigation.  Plaintiffs' counsel has the expertise and financial resources to adequately represent the interests of the Class and Subclass.

45.     Common questions of law and fact exist as to all members of the Class and the Subclass and predominate over any questions solely affecting individual members of the Class and Subclasses. Among the common questions of law and fact common are the following:

     a.   Whether per-credit compensation is a form of piece rate compensation;

     b.   Whether Class Members are non-exempt employees;

     c.   Whether Class Members are entitled to at least minimum wage for all hours worked including time spent working outside of teaching the classroom;

     d.   Whether Class Members are entitled to be paid for time spent working outside of the Contract Period;

     e.   Whether Class Members are entitled to paid off-duty rest breaks;

     f.   Whether Class Members are entitled to separate and hourly pay for their time spent performing Non-Teaching Task and CBA Non-Teaching Tasks and on rest breaks;

     g.   Whether Defendant violated Labor Code §§ 226.2, 1194, 1194.2 and Wage Order No. 4-2001, § 4 by failing to pay Plaintiff Moore and the Class at least minimum wage for their time spent on their Non-Teaching Tasks and CBA Non-Teaching Tasks, and for time spent working outside of the Contract Period during the Class Period;

     h.   Whether Defendant is liable for liquidated damages to Plaintiff Moore and the Class under Labor Code §§ 1194 and 1194.2 for its failure to pay for their time spent on Non-Teaching Tasks and CBA Non-Teaching Tasks, and for time spent working outside of the Contract Period during the Class Period;

i.   Whether Defendant violated Labor Code § 226.2 and Wage Order No. 4-2001, § 4 by failing to pay Plaintiff Moore and the Class separately and apart from the piece for their rest breaks during the Class Period;

j.   Whether Defendant violated Wage Order No. 4-2001, § 12 by maintaining policies and/or practices that prevented or impeded Class Members from taking paid rest periods during the Class Period;

k.   Whether Defendant violated Labor Code § 226.7 and Wage Order No. 4-2001, § 12 by failing to pay premium pay to the Class for each day that a paid rest period was not provided during the Class Period;

l.   Whether Defendant violated Labor Code §§ 201-203 by failing to pay Class Members for all of their wages due to them upon separation of their employment each semester, including the wages owed to them for their time spent on rest periods and Non-Teaching Tasks and CBA Non-teaching Tasks, and time spent working outside of the Contract Period;

m.   Whether these violations constitute unfair, unlawful, and fraudulent business practices, in violation of UCL;

n.   Whether Plaintiff Moore and Class Members are entitled to restitution under Bus. & Prof. Code § 17200 *et seq.* for uncompensated wages, and unpaid premium pay;

o.   Whether Defendant was required to furnish Wage Statement Subclass Members with wage statements that included total hours worked, applicable hourly rates earned, accurate gross and net wages, pursuant to Labor Code § 226(a); and that included the total hours of compensable rest periods, the rate of compensation, and the gross wages paid for those periods, pursuant to Labor Code § 226.2(a);

p.   Whether Defendant violated Labor Code § 226.2(a) and/or Labor Code § 226(a) by failing to issue accurate itemized wage statements;

q.   Whether Defendant violated Labor Code § 226(a) by failing to issue wage statements for time spent working outside of the Contract Period;

r.   Whether Defendant's violation of Labor Code § 226(a) was knowing and intentional;

s.   Whether Wage Statement Subclass Members suffered injury for the purposes of Labor Code § 226(e);

t.   Whether Wage Statement Subclass Members are entitled to injunctive relief under Labor Code § 226(h);

u.  The proper formula(s) for calculating damages, interest, and restitution owed to Plaintiff Moore and the Class Members;

v.  Whether the Class is entitled to declaratory and injunctive relief;

w.  Whether Class Members are entitled to reasonable attorneys' fees and costs pursuant to applicable law.

46.     Class action treatment is superior to any alternative method to ensure the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior method exists for the fair and efficient adjudication of this controversy.  Class Members are readily identifiable from Defendant's employee rosters and/or payroll records.

47.     Defendant's actions are generally applicable to the entire Class.  Prosecution of separate actions by individual members of each Class creates the risk of inconsistent or varying adjudications of the issues presented herein, which, in turn, would establish incompatible standards of conduct for Defendant.

48.     Because joinder of all members is impractical, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Furthermore, the amounts at stake for many members of each Class, while substantial, may not be sufficient to enable them to maintain separate suits against Defendant.

## FIRST CAUSE OF ACTION
**Failure to Pay for Non-productive Time/Failure to Pay for All Hours Worked**
**[Cal. Labor Code §§ 226.2, 1194, 1194.2; Wage Order No. 4-2001, § 4]**

49.     Plaintiff Moore re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

50.     Labor Code § 1194 provides, in relevant part:

"Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage ... applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage [...], including interest thereon, reasonable attorney's fees, and costs of suit."

51.     Labor Code § 1194.2 provides, in relevant part:

"In any action under ... Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. ..."

52.     Labor Code § 226.2(a)(1) states that "employees shall be compensated for ... nonproductive time separate from any piece-rate compensation."

53.     As set forth above, during the Class Period, Plaintiff Moore and Class Members were paid on a per-credit basis which compensated them for the time spent teaching. However, Defendant did not compensate them for their time spent on Non-Teaching Tasks, and CBA Non-teaching Tasks, separately and apart from the piece, or at all.

54.     As also set forth above, during the Class Period, Plaintiff Moore and Class Members were required, as part of their job duties, to perform work before and after their Contract Periods. However, Defendant paid them only for work performed during the Contract Periods. Thus, Plaintiff Moore and Class Members were not paid anything for the time spent working before or after their Contract Periods.

55.     Accordingly, pursuant to § 4 of Wage Order No. 4-2001 and Labor Code §§ 226.2, 1194, and 1194.2, Plaintiff Moore and the Class are entitled to recover, at a minimum, their unpaid hourly wages, plus liquidated damages in an additional amount equal to the wages unlawfully withheld during the Class Period.

56.     Plaintiff Moore and, on behalf of himself and all other Class Members, requests relief as described below.

## SECOND CAUSE OF ACTION
**Failure to Authorize and Permit Paid Rest Periods or Pay Missed Rest Period Premiums**
**[Cal. Labor Code §§ 226.2 and 226.7; IWC Wage Order No. 4-2001 § 12]**

57.     Plaintiff Moore re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

58.     Labor Code § 226.2(a)(1) states that "employees shall be compensated for rest and recovery periods.... separate from any piece-rate compensation."

59.     Wage Order No. 4-2001 § 12(A) provides:

"(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten minutes net rest time per four hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3

1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."

60.     California Labor Code § 226.7(a) provides, "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

61.     As set forth above, during the Class Period, Plaintiff Moore and Class Members routinely worked 3.5 hours or more in a workday.  However, Defendant did not compensate them for their time spent on rest breaks separately and apart from the piece, as required under Labor Code § 226.2.

62.     Defendant also maintained policies and/or practices that impeded Class Members from taking off-duty rest breaks in violation of Wage Order No. 4-2001, § 12, including by requiring them to be available to students before, during, and after class.

63.     As a result of Defendant's policies and practices, Plaintiff Moore and the Class were not authorized and permitted to take compliant rest breaks, and are entitled to recover one additional hour of pay at the employee's regular rate of compensation for each day in which Defendant failed to authorize and permit them to take paid rest periods as required under Labor Code § 226.7 and Wage Order No. 4-2001, § 12.

64.     Plaintiff Moore, on behalf of himself and all other Class Members, requests relief as described below.

**THIRD CAUSE OF ACTION**
**Failure to Pay Compensation Due Upon Termination**
**[Cal. Labor Code §§ 201-203]**

65.     Plaintiff Moore re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

66.     Labor Code §§ 201 and 202 require Defendant to pay all compensation due and owing to Class Members promptly after their employment was terminated. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required by §§ 201 and 202, then the employer is liable for penalties in the form of continued compensation up to 30 work days.

67.     As alleged herein, Defendant willfully failed to pay Plaintiff Moore and the Class for their time spent performing Non-Teaching Tasks and CBA Non-Teaching Tasks, failed to pay for time spent working outside of the Contract Period, failed to pay for rest breaks separately and apart from the piece, and failed to pay rest break premium pay during their employment, or upon their termination or

separation from employment with Defendant, which occurred at the end of each semester, as required by Labor Code §§ 201 and 202.

68.     In light of the clear law requiring that Defendant pay for time spent on Non-Teaching Tasks, CBA Non-Teaching Tasks and/or to pay for all hours worked, and rest breaks hourly and separately from the piece, and the clear law requiring Defendant to authorize and permit Class Members to take off-duty rest breaks and pay premium pay for unpaid/missed rest breaks, Defendant's failure to pay wages for such time was willful.

69.     As a result, Defendant is liable to Plaintiff Moore and other members of the Class for waiting time penalties amounting to thirty (30) days' wages for each formerly employed Class Member pursuant to Labor Code § 203.

70.     Plaintiff Moore, on behalf of himself and all other Class Members, requests relief as described below.

**FOURTH CAUSE OF ACTION**
**Violation of Unfair Competition Laws**
**[Cal. Bus. & Prof. Code § 17200 *et seq.*]**
**As to Plaintiff Moore and the Class**

71.     Plaintiff Moore re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

72.     The UCL prohibits any unlawful, unfair, or fraudulent business practices. Labor Code § 90.5(a) states that it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards. Through its actions alleged herein, Defendant has engaged in unfair competition within the meaning of the UCL, because Defendant's conduct has violated state wage and hour laws as herein described.

73.     Beginning at least four years prior to the filing of this Complaint, Defendant committed, and continues to commit, acts of unfair competition, as defined in the UCL by wrongfully denying Class Members payment in the amount of at least minimum wages for all their hours worked in violation of Labor Code §§ 226.2 and 1194 and Wage Order No. 4-2001, § 4; by failing to pay Class Members for their rest breaks separately and apart from the piece in violation of Labor Code § 226.2; by failing to authorize and permit paid rest breaks, and by failing to pay premium pay for missed rest breaks in violation of Labor Code § 226.7 and Wage Order No. 4-2001 § 12.

74.     By its actions and omissions, Defendant has substantially injured Plaintiff Moore and the Class Members. Defendant's conduct as herein alleged has damaged Plaintiff Moore and the Class and was substantially injurious to them.

75.     The harm to Plaintiff Moore and the Class resulting from Defendant's labor code violations outweighs the utility, if any, of Defendant's policies and practices. Therefore, Defendant's actions described herein constitute an unfair business practice or act within the meaning of the UCL.

76.     Plaintiff Moore, on behalf of himself and all other Class Members, requests relief as described below.

### FIFTH CAUSE OF ACTION
**Failure to Issue Accurate Itemized Wage Statements**
**[Cal. Labor Code §§ 226(a), (e) and (h); 226.2(a)]**
**As to Plaintiff Strawn and the Wage Statement Subclass**

77.     Plaintiff Strawn re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

78.     Labor Code § 226(a) requires an employer to furnish employees who are non-exempt with wage statements that contain total hours worked (subd. (a)(2)), all applicable hourly rates earned (subd. (a)(9)), accurate gross wages (subd. (a)(1)), and accurate net wages earned (subd. (a)(5)).

79.     In addition to the information an employer is required to list on employees' wage statements pursuant to Labor Code § 226(a), Labor Code § 226.2(a) requires employers to list on employees' wage statements, among other information, "total hour of compensable rest and recovery periods, the rate of compensation, and the gross wages paid for those periods during the pay period."

80.     Defendant, however, furnished Wage Statement Subclass Members with wage statements that did not include entries for hours worked and hourly rates earned. Rather the wage statements included a lump sum earned during each pay period and no hours or hourly rates.

81.     Additionally, as a consequence of Defendant's failure to pay separately and hourly for rest periods and Non-Teaching Tasks and CBA Non-Teaching Tasks, and failure to pay premium pay for unpaid/missed rest breaks, Defendant failed to issue accurate wage statements which accounted for (1) gross wages earned, (2) total hours worked, (3) the number of piece-rate units earned and any applicable piece rate, (4) net wages earned (5) total hours of compensable rest and recovery periods; (6) rate of compensation for rest and recovery periods; (7) gross wages paid for compensable rest and recovery periods; (8) total hours of nonproductive time; (9) rate of compensation for nonproductive time; and (10) gross wages paid for nonproductive time in violation of Labor Code § 226.2(a) and/or

226(a)(1), (a)(2), (a)(5), and (a)(9).

82.    Plaintiff Strawn and the Wage Statement Subclass suffered injury as a result of Defendant's knowing and willful violation of Labor Code §§ 226(a), and/or 226.2 in that they could not readily ascertain their regular hourly rate, the total hours worked at that rate, the total hours worked during a pay period, gross and net wages earned, and number of pieces worked, and were not aware that they were owed unpaid compensation for their time spent performing Non-teaching Tasks and CBA Non-Teaching Tasks, and for time spent working outside their Contract Period, from the wage statements alone, without reference to other document or information, including wage statements from previous pay periods. Plaintiff Strawn and the Wage Statement Subclass also suffered injury as a result Defendant's failure to issue wage statements at all for the work performed outside of the Contract Period.

83.    As a result of Defendant's knowing and intentional violations of Labor Code § 226(a) and/or § 226.2 described above, Wage Statement Subclass Members are entitled to recover an initial penalty of $50, and subsequent penalties of $100, for each incomplete and/or inaccurate wage statement issued to them, up to an amount not exceeding an aggregate penalty of $4,000 for each Wage Statement Subclass Member, pursuant to Labor Code § 226(e).

84.    Pursuant to Labor Code § 226(h), Plaintiff Strawn and Wage Statement Subclass Members are entitled to an injunction enjoining Defendant from continuing to issue inaccurate wage statements that violate the Labor Code § 226(a) and/or 226.2.

85.    Plaintiff Strawn, on behalf of himself and Wage Statement Subclass Members, requests relief as described below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Moore, on behalf of himself and the Class, and Plaintiff Strawn on behalf of himself and the Wage Statement Subclass, pray for the following relief:

A.    An Order that this action may proceed and be maintained as a class action, with the Class and Subclass as designated and defined in this Complaint;

B.    That Plaintiff Moore be certified as representative of the Class, and Plaintiff Strawn be certified as representative of the Wage Statement Subclass; and their counsel be certified as Class Counsel;

C.    On the First Cause of Action: That the Court find and declare that Defendant violated Labor Code §§ 226.2, 1194, and 1194.2 and/or Wage Order No. 4-2001, § 4 by failing to pay Plaintiff Moore and Class Members for their time spent on Non-Teaching Tasks and CBA Non-teaching Tasks

separately and apart from the piece, and failing to pay for all hours works outside of the Contract Period, and award Plaintiff Moore and the Class the amount of their unpaid minimum wages owed to them, plus liquidated damages in an amount equal to the wages unlawfully withheld during the Class Period.

D. <u>On the Second Cause of Action</u>: That the Court find and declare that Defendant violated Labor Code §§ 226.2, and/or 226.7, and Wage Order No. 4-2001, § 12 by failing to pay Plaintiff Moore and Class Members for their time spent on rest breaks separately and apart from the piece, failing to authorize and permit timely off-duty rest breaks, and failing to pay premium pay for unpaid/missed rest breaks; and award Plaintiff Moore and the Class unpaid premium pay for missed rest breaks.

E. <u>On the Third Cause of Action</u>: That the Court find and declare that Defendant has violated §§ 201–203 of the California Labor Code, and award Plaintiff Moore and the Class penalties in the amount of 30 days' wages per Class Member.

F. <u>On the Fourth Cause of Action</u>: That the Court find and declare Defendant has violated the UCL by failing to authorize and permit paid off-duty rest breaks for members of the Class, in violation of Labor Code §§ 226.2, 226.7, and Wage Order No. 4-2001, § 12; by failing to pay Class Members for their Non-Teaching Tasks and CBA Non-teaching Tasks separately and apart from the piece, in violation of Labor Code § 226.2 and 1194, and Wage Order No. 4-2001, § 4; by failing to pay Class Members for time spent working outside of the Contract Period in violation of Labor Code § 1194; award restitution to the Class; and that the Court enjoin Defendant from continuing to enforce policies and practices that violate the Labor Code.

G. <u>On the Fifth Cause of Action</u>: That the Court find and declare that Defendant has willfully violated §§ 226(a) and 226.2(a) of the California Labor Code; enjoin Defendant, pursuant to Labor Code § 226(h), from continuing to issue inaccurate wage statements that violate the Labor Code § 226(a) and/or 226.2; and award Plaintiff Strawn and Wage Statement Subclass Members statutory penalties as specified in Labor Code § 226(e).

H. That the Court award attorneys' fees and costs of suit to the extent permitted by law, including, but not limited to, Labor Code §§ 1194, 226(e) and (h), and Cal. Civ. Pro. Code § 1021.5.

I. All other relief as this Court deems proper.

1

**JURY DEMAND**

2     Plaintiffs hereby demands trial by jury of all claims against Defendant alleged herein.

3

4     Dated: September 4, 2019                   Respectfully submitted,

5

6

7                                                 By: Julian Hammond

8                                                 HAMMONDLAW, P.C.
                                                  *Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28